UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | No. | 23 CV 16469 |
| v. | ) | | |
| | ) | | |
| ONE 2008 Ford F-450 Super Duty Pickup | ) | | |
| Truck, VIN:1FTXW43R28ED02810, | ) | | |
| | ) | | |
| ONE 2017 Ford Transit 250 Van, | ) | | |
| VIN: 1FTYR1ZM9HKA05492, | ) | | |
| | ) | | |
| Defendants. | ) | | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE, IN REM**

The United States of America, by Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant vehicles, alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**NATURE OF ACTION**

1. This is a Forfeiture *in Rem* action brought pursuant to Title 21, United States Code, Section 881(a)(4), for forfeiture of a 2008 Ford F-450 Super Duty Pickup Truck, VIN:1FTXW43R28ED02810 ("defendant 2008 Ford F-450 Truck"), and a 2017 Ford Transit 250 Van, VIN: 1FTYR1ZM9HKA05492 ("defendant 2017 Ford Transit Van"). The defendant vehicles are registered to Pablo Morales and his company, A-1 Accurate Enterprises, Inc.

2.     This complaint is verified by the attached verification of Special Agent Stephen O'Rourke of the Drug Enforcement Administration ("DEA"), **Attachment A**.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over an action commenced by the United States as plaintiff under Title 28, United States Code, Section 1345, and over an action for forfeiture *in rem* under Title 28, United States Code, Section 1355(a).

4.     This Court has *in rem* jurisdiction of the defendant vehicles pursuant to Title 28, United States Code, Section 1355(b)(1)(A), as certain acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5.     Venue is proper under Title 28, United States Code, Sections 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and under Title 28, United States Code, Section 1395(b), as the defendant vehicles were found within the Northern District of Illinois.

6.     The defendants *in rem* consist of the following property: a 2008 Ford F-450 Super Duty Pickup Truck, VIN:1FTXW43R28ED02810 ("defendant 2008 Ford F-450 Truck"), and a 2017 Ford Transit 250 Van, VIN: 1FTYR1ZM9HKA05492 ("defendant 2017 Ford Transit Van"). The defendant vehicles are registered to Pablo Morales and his company, A-1 Accurate Enterprises, Inc.

7.     The defendant vehicles are subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(4), as property used or intended to be used to

2

facilitate the transportation, sale, receipt, possession of narcotics, in violation of the Controlled Substances Act, Title 21, United States Code, Section 841, et seq.

## SPECIFIC ALLEGATIONS

8. On or about May 31, 2023, a criminal investigation began when a confidential law enforcement source (CS-1) informed law enforcement that he/she had recently been contacted by an individual named Pablo Morales ("Morales"), with whom CS-1 had coordinated in the past to transact narcotics. While in the presence of law enforcement, CS-1 placed a recorded phone call to Morales, during which CS-1 and Morales agreed to meet on or about June 2, 2023, to further discuss the price and purchase of narcotics.

9. On or about June 2, 2023, CS-1 met with law enforcement in anticipation of his/her arranged meeting with Morales. At approximately 9:45 a.m., CS-1 placed a recorded call to Morales and set up a meeting that was to occur at a business located on the 3800 block of W. Lake Street, in Melrose Park, Illinois at around 12:00 p.m. that day. Prior to the meeting, agents equipped CS-1 with audio/video recording devices and followed CS-1 to the arranged meeting location. At approximately 11:55 a.m., CS-1 received a phone call from Morales directing CS-1 to a business located on the 1500 block of Mannheim Road, in Stone Park, Illinois. Law enforcement established physical surveillance at this second location in Stone Park, and observed Morales arrive to the meeting at approximately 12:01 p.m. in the defendant 2008 Ford F-450 Truck. Morales parked and entered CS-1's vehicle, exiting approximately three minutes later and departing the area. At approximately 12:10

3

p.m., CS-1 met with law enforcement and placed a recorded phone call to Morales, during which CS-1 asked Morales to provide a heroin sample at their next meeting. Later that day, at approximately 2:33 p.m., CS-1 placed another recorded phone call to Morales to inform Morales, using coded language, that CS-1 had to go to work and would be unable to receive a heroin sample that day.

### Defendant 2008 Ford F-450 Truck

10.     During the morning of on or about June 6, 2023, CS-1 met with law enforcement in anticipation of meeting Morales to receive a heroin sample. At approximately 9:35 a.m., CS-1 placed two recorded phone calls to Morales during which CS-1 and Morales agreed to meet at around 11:30 a.m. for CS-1 to retrieve what he/she understood to be a sample of heroin from Morales.

11.     At approximately 11:57 a.m., law enforcement searched CS-1's vehicle and person for large amounts of U.S. currency or contraband, with negative results. CS-1 then departed the area and was followed by law enforcement, who later observed CS-1 park along S. Homan Avenue in Chicago.

12.     At approximately 12:15 p.m., law enforcement observed Morales arrive and park along S. Homan Avenue driving the defendant 2008 Ford F-450 Truck. Morales then relocated to 30th Street, at which time CS-1 exited his/her vehicle and entered Morales' vehicle. Approximately two minutes later, law enforcement observed CS-1 exit the defendant 2008 Ford F-450 Truck, with Morales departing the area shortly thereafter.

13.     According to CS-1, during the meeting inside the defendant 2008 Ford

4

F-450 Truck, Morales handed CS-1 a bag that contained a brown powdery substance and stated that he had approximately 200 grams of what CS-1 understood to be heroin available for sale right now for approximately $9,500.

14.    At approximately 12:23 p.m., law enforcement met with CS-1 at a predetermined location and retrieved from CS-1 a brown powdery substance that weighed approximately 31 grams. DEA lab testing later confirmed the substance tested positive for the presence of heroin and fentanyl.

15.    At approximately 12:56 p.m., CS-1 placed a recorded phone call to Morales and, using coded language, CS-1 informed Morales that CS-1 wanted to purchase two kilograms of heroin for $40,000 per kilo, or one kilogram of heroin for $43,000. At approximately 1:28 p.m., CS-1 placed another recorded phone call to Morales, asking Morales if he had a time frame for the transaction. Morales, using coded language, informed CS-1 that he would let CS-1 know, but that he had approximately 200 grams of heroin ready for sale now.

16.    On the morning of on or about June 7, 2023, CS-1 met with law enforcement in anticipation of another meeting with Morales. At approximately 10:05 a.m., CS-1 placed a recorded phone call to Morales during which CS-1 and Morales agreed to meet at a gas station located on the 3100 block S. Cicero Ave., in Cicero, Illinois.

17.    At approximately 10:10 a.m., law enforcement searched CS-1's vehicle and person for large amounts of U.S. currency or contraband, with negative results. CS-1 was equipped with a covert audio/video recording device and departed the area,

5

followed by law enforcement.

18.     At approximately 10:25 a.m., law enforcement observed CS-1 park at the above-referenced gas station located on the 3100 block S. Cicero Ave., in Cicero, and enter Morales' vehicle, the defendant 2008 Ford F-450 Truck. Two minutes later, law enforcement observed CS-1 exit the defendant 2008 Ford F-450 Truck, enter his/her vehicle, and depart the area.

19.     Law enforcement then met with CS-1 and retrieved two plastic bags, one containing a brown powdery substance weighing approximately 59 grams and one containing an off-white powdery substance weighing approximately 59 grams. DEA lab testing later confirmed that substances tested positive for heroin, and heroin and fentanyl, respectively.

20.     During law enforcement's subsequent interview with CS-1, as corroborated by audio recording, CS-1 indicated that while inside the defendant 2008 Ford F-450 Truck, Morales, after handing CS-1 an envelope containing the two narcotics samples, used coded language to tell CS-1 that Morales would sell one kilogram of narcotics to CS-1 for $48,000 or two kilograms of narcotics to CS-1 for $42,000 each. Morales further informed CS-1 that he would be obtaining the kilograms later that afternoon and Morales and CS-1 agreed to meet on or about June 8, 2023, at around 8:00 a.m. to conduct the narcotics transaction.

**Defendant 2017 Ford Transit Van**

21.     On or about June 8, 2023, at 6:41 a.m., law enforcement observed Morales arrive at, and enter, a detached garage on the 4200 block of West 25th Place,

6

in Chicago, driving the defendant 2017 Ford Transit Van. During the ensuing surveillance, law enforcement observed Morales leave the garage with a yellow box, which Morales placed into the defendant 2017 Ford Transit Van. According to law enforcement review of residential records the detached garage located on the 4200 block of West 25th Place, in Chicago, is rented by Morales.

22.     CS-1 met with law enforcement in anticipation of conducting a controlled purchase of two kilograms of narcotics from Morales. At approximately 6:45 a.m., CS-1 placed a recorded call to Morales that was live monitored by law enforcement. During the call, CS-1 informed Morales that CS-1 was preparing for their meeting.

23.     At approximately 6:59 a.m., Morales texted CS-1 and stated he would be "ready" to conduct the previously arranged two-kilogram deal at 8:00 a.m. Law enforcement observed Morales leave the detached garage at approximately 8:05 a.m. At approximately 8:14 a.m., law enforcement observed Morales arrive at his residence located on the 3000 block of South Homan Avenue (the "Homan Residence") in the 2017 Ford Transit Van carrying a lunchbox sized cooler.

24.     At approximately 8:45 a.m., CS-1 placed a recorded call to Morales that was live monitored by law enforcement. During the call, CS-1 informed Morales that CS-1 had arrived at a location adjacent to the Homan Residence. CS-1 asked Morales whether he could come outside of the residence to meet, and Morales responded "You can just come inside, I'm here. We have to count that, make sure whatever it takes." CS-1 responded "You have to count it?" and Morales replied "Yes, just to be safe, I'm

7

here. You can come inside no problem." Morales continued, "You can just get here and check the thing and I check the thing."

25.    At approximately 8:51 a.m., during a recorded call that was live monitored by law enforcement, CS-1, while outside of the Homan Residence, stated to Morales, "Make sure you have it, he said just come in, said go in and make sure it's the same one. Come back get the money, bring you the money, and let you count it." Morales responded "Uh, no I don't think uh no no. Our company is really serious. If you cannot trust us that's fine. I know this is the first time. Our company is really serious, we don't play around with this shit. The one you got yesterday, that's the one I have, one and one." After additional conversation, CS-1 responded, "Yea, he told me just look at it, make sure you got it and make sure it's the right one and then I give you all the money." Morales responded, "If you want to come in and check it out that's all, you can check it out you cannot take anything."

26.    At approximately 8:58 a.m., CS-1, while equipped with a covert audio/video recording device, entered the Homan Residence and met with Morales. CS-1 observed Morales remove a cinderblock to access the area under a furnace in the laundry room, from which Morales retrieved two brick-shaped objects of suspect narcotics, one wrapped in black plastic and labeled "KG" and one wrapped in grey plastic. Audio recording of the meeting indicated that as Morales opened the area concealing the narcotics he told CS-1 "Our company is always busy, so you don't have to worry. We don't play around, it's the same shit. Hold on we can open it." CS-1

8

responded, "As long as it's the one with you know…oh you don't have to open it. As long as it's the same one."

27.     CS-1 asked if he should then go to his vehicle to procure money to buy the narcotics, to which Morales responded, "Go get the money, make sure it's one bag." CS-1 replied, "Yeah one bag, 100." Morales then added, "Ok so you bring it here, don't play games man. Let's say you finish this one, we have plenty of work. Maybe we can get to a better number. Let's say you can get through this one." After additional conversation CS-1 left the residence and went to back to his/her vehicle, purportedly to retrieve the money, and thereafter left the scene.

28.     At approximately 9:11 a.m., Morales exited the Homan Residence and was arrested by DEA on suspicion of narcotics offenses and the defendant 2008 Ford F-450 Truck and the 2017 Ford Transit Van were administratively seized by DEA.

29.     At approximately 10:09 a.m., narcotic detector canine Ace conducted a free air sniff test on the exterior of the defendant 2008 Ford F-450 Truck. Canine Ace was last certified on May 3, 2023, by the Illinois Law Enforcement Training and Standards Board. Ace positively alerted to the presumptive odor of narcotic emitting from the defendant 2008 Ford F-450 Truck. No similar narcotic detection test was conducted on the 2017 Ford Transit Van.

30.     At approximately 4:40 p.m., canine Ace conducted a free air sniff test on the exterior perimeter of the previously referenced detached garage located on the 4200 block of West 25th Place, in Chicago. Canine Ace positively alerted to the presumptive odor of narcotics emitting from the detached garage; however, a

subsequent search of the garage pursuant to a federal search and seizure warrant issued by Magistrate Judge Beth W. Jantz (*see* 23 MC 587) did not reveal the presence of narcotics.

31. At approximately 6:48 p.m., law enforcement executed a search warrant on the Homan Residence pursuant to a federal search and seizure warrant issued by Magistrate Judge Beth W. Jantz (*see* 23 MC 586). The search resulted in the seizure of two brick-shaped objects consistent with the kilograms of narcotics displayed to CS-1 by Morales earlier that morning, which DEA lab testing later confirmed were positive for approximately 993 grams of heroin and fentanyl, and approximately 939 grams of fentanyl and ANPP, a fentanyl precursor.

## PENDING CRIMINAL CASE

32. On August 2, 2023, a superseding indictment was returned against Morales in *U.S. v. Pablo Morales*, case number 23 CR 350, pending in the United States District Court for the Northern District of Illinois. The superseding indictment charges Morales with distribution of a quantity of fentanyl and a quantity of heroin (Count One); distribution of 40 grams or more of fentanyl and a quantity of heroin (Count Two); and distribution of 400 grams or more of fentanyl, 100 grams or more of heroin, and a quantity of ANPP (Count Three), in violation of Title 21 United States Code, Section 841(a)(1). The Superseding Indictment is attached as **Attachment B.**

33. Based upon the facts related above and the attached affidavit of DEA Agent Stephen O'Rourke, there is probable cause to believe that the defendant vehicles are subject to forfeiture pursuant to Title 21 United States Code, Section

881(a)(4), as property used or intended for use, to facilitate the transportation, sale, receipt, possession of narcotics, a violation of the Controlled Substances Act, Title 21 United States Code, Section 841, *et seq*.

WHEREFORE, the United States of America prays:

A.    That due process issue to enforce the forfeiture of the defendant vehicles and that appropriate notice be given to all interested persons to appear and show cause why the forfeiture should not be made final by decree; and

B.    That the Court enter a decree declaring that the defendant vehicles be forfeited to the United States and disposed of pursuant to the provisions of Title 21 United States Code, Section 881(a)(4).

WHEREFORE, the United States of America requests:

a.    the property be proceeded against for forfeiture and condemnation;

b.    due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

c.    this Court adjudge and decree that the defendant property be forfeited to the United States and disposed of according to law; and

d.    any trial be before a jury.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:    */s/ Brian Williamson*
BRIAN WILLIAMSON
Assistant United States Attorney
219 South Dearborn Street, 5th Floor

11

Chicago, Illinois 60604
(312) 353-5300